UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BRUCE JARRARD,

        Defendant

_____ /

**Case:2:09-cr-20118**
**Judge: Steeh, George Caram**
**MJ: Morgan, Virginia M**
**Filed: 03-11-2009 At 01:56 PM**
**INDI USA V. SEALED MATTER (1 DFT) T**
**AM**

HONORABLE:

<u>**VIOLATIONS**</u>:

WIRE FRAUD
(18 U.S.C. 1343, 1346, 2)

THEFT OF TRADE SECRETS
(18 U.S.C. 1832, 2)

## <u>INDICTMENT</u>

THE GRAND JURY CHARGES:

### <u>COUNT 1</u>
### (Wire Fraud, 18 U.S.C, 1343, 1346, 2)

At  times pertinent to this Indictment:

### <u>**General Allegations**</u>

1.     World Alliance Financial Corp. ("WAF") was based in Melville, New York, and sold reverse mortgages.  For purposes of this Indictment, a "reverse mortgage" was a financial transaction where a real estate owner  pledged her real estate and its equity to WAF in exchange for the payment of

2 of 11

proceeds (money) to the real estate owner over a period of time; when the real estate owner vacated the property (by death or moving), WAF would become the owner of the real estate.

2.  WAF advertised its reverse mortgages via television and websites. In response to these advertisements, members of the public contacted WAF to obtain information about its reverse mortgages.

3.  WAF's Lender Lead Solutions division was located in Troy, Michigan, and it gathered and processed reverse mortgage lead information.

4.  WAF's reverse mortgage leads included information such as: [A] the contacting person's name, [B] date of birth, [C] address, [D] telephone number, [E] e-mail address, [F] the estimated household income, and [G] the estimated value of the real estate including the "balance." The reverse mortgage leads cost WAF approximately $75.00 each to develop, which (among other costs) involved the costs of its television advertising.

5.  WAF retained some of the reverse mortgage leads for use by its in-house sales efforts, but sold the rest to other financial services companies for approximately $100.00 to $120.00 per lead. WAF sold these reverse mortgage leads throughout the United States in interstate commerce.

6.  WAF's reverse mortgage leads were its trade secrets and intellectual

property.  At its Troy, Michigan, office, WAF undertook  reasonable steps
to protect its trade secrets and intellectual property in the reverse  mortgage
leads.  Some of WAF's protective measures included, among others,
physical security of its premises, limiting access to those employees who
needed access to perform their job duties, and using computer security
policies, including requiring user names and passwords.

7.   WAF's reverse mortgage leads had independent economic value, separate
and apart from their development costs.  WAF's trade secrets and
intellectual property derived independent economic value, both actual and
potential, from not being generally known to the public.

**Jarrard's Employment at WAF**

8.   Defendant Bruce Jarrard was a resident of Royal Oak, Michigan.  From on
or about February 11, 2008, until on or about May 16, 2008, Jarrard was
employed at WAF as a Senior Loan Officer and Senior Advisor, working at
its Lender Leads Solutions division in Troy, Michigan.

9.   On or about February 11, 2008, Jarrard signed a WAF "Senior Loan Officer
Employment Agreement" which included a section called "Confidential
Information and Trade Secrets."   Among other things, that section required
Jarrard to protect WAF's "Confidential Information," which included

3

WAF's advertising data and investor (customer) lists.  The agreement also contained a section called "Return of Records and Papers" which required Jarrard to return to WAF all company records (including computer records) upon leaving its employment.  Also on or abut February 11, 2008, Jarrard signed a "Confidential Nature of Work Policy," which explained the confidential nature of the materials and data which Jarrard would have access to as a WAF employee.

10.     At WAF, Jarrard was provided with a computer, a company e-mail account (bjarrard@wafcorp.com), and internet access.

**Jarrard's Fiduciary Duties to WAF**

11.     As an employee of WAF, Jarrard occupied a fiduciary position of trust, confidence and obligation.  In performing his duties for WAF, Jarrard owed to WAF the fiduciary duties of fidelity, honesty, candor, loyalty, and care. Jarrard was obligated to provide WAF with his undivided loyalty free of conflicts of interests or potential conflicts of interests.  Jarrard was also obligated to protect and preserve WAF's property, including its trade secrets and intellectual property, and its reverse mortgage leads.  Specifically, Jarrard was obligated not to steal or remove from WAF's premises its trade secrets or intellectual property.

4

12. Jarrard was obligated not to transfer WAF's trade secrets or intellectual property to any actual or potential competitor of WAF.

13. WAF had an intangible right to Jarrard's honest services in the operation of the company's business.  As such, Jarrard owed to WAF a duty to: [A] refrain from the use of his position for private financial gain; [B] disclose to WAF conflicts of interest and other material information that resulted in his direct or indirect personal financial gain; [C] refrain from stealing or alienating WAF's trade secrets or intellectual property, and [D] refrain from transferring WAF's trade secrets or intellectual property to any actual or potential competitor of WAF's.

**Jarrard's Theft of Trade Secrets and Intellectual Property**

14. On or about May 2, 2008, while a WAF employee, Jarrard, without authority, removed and stole  reverse mortgage leads from WAF's computer system in its offices in Troy, Michigan.  In doing so, Jarrard acted to injure the owner of the trade secrets and intellectual property (WAF), and to advance his personal economic interests, by selling or otherwise exploiting WAF's trade secrets and intellectual property.

15. On that date, Jarrard sent an e-mail from his WAF computer to his personal e-mail account at Yahoo!, located in California (brucejarrard@yahoo.com);

5

attached to the e-mail was an electronic file (a spreadsheet) containing several hundred of WAF's reverse mortgage leads. The spreadsheet, and the data therein, was WAF's trade secret and intellectual property.

16. Jarrard did not report to WAF his illegal transfer of its trade secrets and intellectual property to his Yahoo! account or his theft of the electronic data.

17. On or about May 16, 2008, WAF discharged Jarrard for improperly distributing confidential company data (salary details) to fellow workers. Upon leaving the company, Jarrard did not return to WAF the reverse mortgage leads which he had stolen or the electronic files involved; nor did Jarrard disclose to WAF that he had stolen its reverse mortgage leads.

18. After Jarrard left WAF, he attempted to sell its reverse mortgage leads via the internet, claiming he had 56,000 WAF leads available for sale. Jarrard also gave away some of WAF's reverse mortgage leads to his friends and associates for their use.

**The Scheme and Artifice to Defraud WAF**

19. From on or about a date unknown to the Grand Jury (but no later than May 2, 2008), until a date unknown to the Grand Jury, Jarrard devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations or promises (which were material

6

to WAF), specifically to defraud WAF of: [A] its property, that is, its trade secrets and intellectual property in its reverse mortgage leads, and [B] WAF's intangible right to Jarrard's honest services in the execution of his duties as a faithful WAF employee.

20.  As more fully set forth below, on or about the date listed below, in the Eastern District of Michigan, Southern Division, and elsewhere, Defendant

**BRUCE JARRARD**

having knowingly devised and intending to devise, a scheme and artifice to defraud (including a scheme and artifice to defraud WAF of the intangible right to Jarrard's honest services), and to obtain money and property by means of false and fraudulent pretenses, representations and promises, for the purposes of executing the scheme and artifice, and attempting to do so, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, certain writings, signs, signals, pictures and sounds, to wit:

| Count | Date and Item Sent by Interstate Wire Communication |
|---|---|
| 1 | On or about May 2, 2008, Jarrard, from WAF's office in Troy, Michigan, using an interstate wire communication facility, transmitted information in the form of a file (including WAF's trade secrets and intellectual property) to his personal account at Yahoo! in California |

**All in violation of Title 18, United States Code, Sections 1343, 1346, 2.**

7

## COUNT 2
## (18 U.S.C.  1832(a)(1), (a)(2), (a)(4) 2,
## Theft of Trade Secrets and Attempted Theft of Trade Secrets)

21.   The allegations contained in paragraphs 1 through 19  above are

incorporated by reference as if set forth fully herein.

22.   On or about May 2, 2008, in the Eastern District of Michigan, Southern

Division, and elsewhere, Defendant

## BRUCE JARRARD,

did knowingly and intentionally, with the intent to convert information that

included trade secrets belonging to WAF, that were related to and included

in products produced for and placed in interstate commerce, to the economic

benefit of a person other than the owner thereof (WAF), and intending and

knowing that the offense would injure the owner of the trade secrets, did

steal, without authorization appropriate, take, carry away, transmit, deliver,

send, communicate and convey such information, and attempt to do so, to

wit, by sending an electronic file containing WAF's reverse mortgage leads

from WAF's computers to Jarrard's personal Yahoo! e-mail account.

**All in violation of Title 18, United States Code, Sections 1832(a)(1),
(a)(2) and (a)(4)  and Section 2.**

9

THIS IS A TRUE BILL

s/ Grand Jury Foreperson
FOREPERSON
GRAND JURY


TERRENCE BERG
Acting United States Attorney

s/ SHELDON N. LIGHT
Chief, Economic Crimes Unit

s/ CHRISTOPHER L. VARNER
Assistant United States Attorney

Dated: March 11, 2009

| States District Court<br>ern District of Michigan | **Criminal Case Cov** | Case:2:09-cr-20118<br>Judge: Steeh, George Caram<br>MJ: Morgan, Virginia M<br>Filed: 03-11-2009 At 01:56 PM<br>INDI USA V. SEALED MATTER (1 DFT) T<br>AM |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to con

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
|       Yes      X   No | **AUSA's Initials:**  CLV |

### Case Title: U.S. v. BRUCE JARRARD

County where offense occurred :  OAKLAND

**Check One:**    **X Felony**      ☐ **Misdemeanor**      ☐ **Petty**

   X_Indictment/___Information --- no prior complaint.

   ___Indictment/____Information --- based upon prior complaints [ Criminal No:      ]

   ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information:

**Superseding to Case No: Judge:** _____     _____

    ☐    Original case was terminated; no additional charges or defendants.

    ☐    Corrects errors; no additional charges or defendants.

    ☐    Involves, for plea purposes, different charges or adds counts.

    ☐    Embraces same subject matter but adds the additional defendants or charges below:

    **Defendant name**            **Charges**

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

March 11, 2009 _____
Date

CHRISTOPHER L. VARNER
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9684
Fax: (313) 226-2873
Email: Christopher.Varner@usdoj.gov
Bar ID: 413642 (D.C.)

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04